Docket No. 101747.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RONEL ALEXIS LEWIS, Appellant.

*Opinion filed November 30, 2006.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant Ronel Alexis Lewis was convicted of criminal drug conspiracy (720 ILCS 570/405.1 (West 2002)) and unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2002)). The circuit court of McLean County sentenced him to seven years' imprisonment on each offense, to be served concurrently. The appellate court vacated defendant's conviction of criminal drug conspiracy, but otherwise affirmed the judgment of the trial court. 361 Ill. App. 3d 1006.

We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a). On appeal to this court, defendant contends that the trial court erred in admitting a police detective's testimony that another witness made an out-of-court identification of defendant. Defendant argues

that this testimony was not admissible under the hearsay exception contained in section 115–12 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115–12 (West 2002)). We hold that the trial court did not err in admitting the disputed testimony under section 115–12. Accordingly, we affirm the judgment of the appellate court.

## I. BACKGROUND

At defendant's bench trial, Lori Clem testified that she received several telephone calls from her former neighbor, Charlie, who wanted Clem to obtain crack cocaine for him. Clem initially refused, but agreed to purchase the cocaine after her boyfriend asked her to take a profit from the transaction. Clem's boyfriend wanted money to buy heroin.

Clem testified that she planned to buy the cocaine from her neighbors who lived across the alley. She identified the neighbors as Marcella Miramontes, Marcella's boyfriend Cory, and defendant. According to Clem, Miramontes had stated on an earlier occasion that either she or defendant could supply Clem with drugs. Miramontes gave Clem her cell phone number and defendant's cell phone number. Clem testified that she had often seen defendant working on his car in the alley over the course of three or four weeks prior to this transaction. She had waved to defendant, but did not speak to him beyond saying "hello." Clem knew defendant only by his nickname, "Rail."

Clem called defendant on his cell phone after agreeing to purchase the crack cocaine for Charlie. Defendant told Clem to call him back when the buyer arrived. After Charlie arrived, Clem called defendant again. Defendant told Clem to meet him at the back of her house. Clem received $100 from Charlie and walked toward the back of her house to meet defendant.

Clem testified that she met defendant on her back porch. She gave defendant $80 in exchange for a cellophane package containing crack cocaine. Defendant then walked back across the alley to his house while Clem walked to the car and delivered the cocaine to Charlie. At that point, Clem recognized the driver of the car and asked if he was a police officer. The driver denied being a police officer and they

drove away. Clem testified that this was the first time she had purchased drugs from defendant, but she had bought drugs from Cory on one previous occasion. She identified defendant in court as the man she knew as "Rail."

Detective John Heinlen testified that he had been working with a confidential informant named Charlie. They had been attempting to purchase crack cocaine from Clem in an effort to identify her supplier. Charlie called Clem to arrange the purchase. Heinlen and Charlie then drove to Clem's house in an undercover police car. When they arrived, Clem approached the car. While Heinlen, Charlie and Clem were speaking, Heinlen observed a man in the alley behind Clem's house approximately 30 yards from the car. Heinlen testified that the man walked to within 10 to 15 yards of the car. Heinlen testified that he had a clear view of the man, and he identified defendant as the individual he saw approach the car.

Clem received $100 from Charlie and walked with defendant behind her house. Detective Heinlen testified that he did not observe any exchange of drugs and money between Clem and defendant. When they emerged from behind the house, Clem walked toward the car and defendant walked back toward the alley. Clem approached the car and asked if Heinlen was a police officer. After Heinlen denied being a police officer, Clem handed him the package containing cocaine. The next day, Clem was arrested and transported to the police station where she spoke with Detective Heinlen.

Heinlen testified that Clem identified the person who sold her the cocaine as "Rail." Heinlen connected that nickname to defendant and obtained a photograph of defendant. Heinlen immediately recognized the person in the photograph as defendant. Heinlen testified that he showed the photograph to Clem. When the prosecutor inquired as to Clem's reaction to the photograph, defendant objected on the ground that the question called for hearsay. The trial court overruled the objection, stating that it was admissible "[u]nder 115–12." Heinlen then testified that Clem identified the man in the photograph as Rail. Clem stated he was the person who had sold her cocaine the previous day.

Defendant presented testimony of several of his family members. They testified that defendant was visiting them in Milwaukee at the time of this transaction. Defendant's family members testified that

defendant arrived in Milwaukee the day before the transaction occurred and he stayed for approximately 10 days.

At the State's request, the trial court took judicial notice of a McLean County case involving several traffic tickets issued to "Ronel A. Lewis." The traffic tickets were issued in Bloomington, Illinois, during the time period when defendant's family members claimed defendant was in Milwaukee. The State also recalled Detective Heinlen for rebuttal testimony. Heinlen testified that he saw defendant near the location of the drug transaction the day after it occurred.

The trial court found defendant guilty of both offenses. Defendant filed a posttrial motion asserting, in pertinent part, that he was not proven guilty beyond a reasonable doubt because the State presented hearsay testimony at trial. The trial court denied defendant's motion and sentenced him to concurrent terms of seven years' imprisonment.

On appeal, defendant argued that the trial court erred in admitting Detective Heinlen's testimony concerning Clem's out-of-court identification of defendant. 361 Ill. App. 3d at 1007. The appellate court held that Heinlen's testimony was properly admitted under section 115–12 of the Code. 361 Ill. App. 3d at 1012-19. The appellate court also held that defendant could not be convicted of both the inchoate offense of criminal drug conspiracy and the underlying principal offense of delivery of a controlled substance. 361 Ill. App. 3d at 1019. The appellate court, therefore, affirmed defendant's conviction of delivery of a controlled substance, but vacated his conviction of criminal drug conspiracy. 361 Ill. App. 3d at 1020.


II. ANALYSIS

On appeal to this court, defendant renews his argument that the trial court erred in admitting Detective Heinlen's identification testimony under section 115–12 of the Code (725 ILCS 5/115–12 (West 2002)). The State initially responds that defendant has forfeited this argument because his trial objection and posttrial motion were not sufficiently specific to preserve the alleged error.

To preserve an issue for review, a defendant must both object at trial and raise the issue in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The posttrial motion must specify the

grounds for a new trial. *Enoch*, 122 Ill. 2d at 187. In discussing the purpose of the forfeiture rule, this court has stated:

> " 'Failure to raise issues in the trial court denies that court the opportunity to grant a new trial, if warranted. This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration to errors considered significant, the appeal is open-ended. Appellate counsel may comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considered them of any importance.' " *Enoch*, 122 Ill. 2d at 186, quoting *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984).

In this case, defendant raised a hearsay objection to the admission of Heinlen's identification testimony. The trial court found the testimony was admissible under the hearsay exception contained in section 115–12. The trial court, therefore, evidently understood that defendant was challenging the admissibility of the testimony under section 115–12. The court considered and ruled upon that issue. Thus, we conclude that the trial objection was sufficient to preserve the issue of the admissibility of the testimony under section 115–12.

In his posttrial motion, defendant asserted that he was not proven guilty beyond a reasonable doubt because the State presented hearsay testimony. This motion is sufficient to identify the admission of hearsay testimony as an issue. The State argues that the motion was insufficient to preserve the issue because defendant "did not identify the hearsay testimony or even the name of the witness involved." The record shows, however, that there were only three objections during this one-day bench trial. One of those objections was based on relevance. The other two objections, based on hearsay, occurred within a short time of each other and both were related to Heinlen's identification testimony. Thus, the trial court would not have been confused on the hearsay testimony defendant was challenging in his motion. Given this record, we find that the posttrial motion was sufficient to identify the claimed error for the trial court's consideration and to limit the claimed errors on appeal. Defendant did not forfeit this issue for review.

On the merits, defendant argues that the section 115–12 requirements were not satisfied for admission of Detective Heinlen's testimony concerning Clem's out-of-court identification. Thus, defendant contends that Heinlen's testimony was inadmissible hearsay.

Section 115–12 provides that:

> "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115–12 (West 2002).

First, we note that there is some disagreement in the appellate court over the interpretation of section 115–12. In this case, the appellate court held that a declarant is not required to testify about his or her out-of-court identification before a third party testifies to the identification. 361 Ill. App. 3d at 1012-13. Other appellate court panels have held section 115–12 requires the declarant to testify about the identification before a third party may testify on that subject. See *People v. Stackhouse*, 354 Ill. App. 3d 265, 278 (2004); *People v. Bradley*, 336 Ill. App. 3d 62, 70 (2002). Thus, we first resolve this conflict in the construction of section 115–12 before determining whether the requirements of the statute were satisfied in this case.

The construction of a statute is a question of law subject to *de novo* review. *People v. Bonutti*, 212 Ill. 2d 182, 188-89 (2004). Our primary goal in construing a statute is to determine and give effect to the intent of the legislature. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). The best indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 226 (2005), quoting *Caveney v. Bower*, 207 Ill. 2d 82, 87-88 (2003). When statutory language is plain and unambiguous, we must apply the statute as written without resort to aids of statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). We will not depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that the legislature did not express. *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 568 (2002). Further, a court may not add provisions that are not found in a statute. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 153 (1997).

The plain language of section 115–12 requires the declarant to testify and be subject to cross-examination on the identification statement. 725 ILCS 5/115–12 (West 2002). There are no other requirements for admission of a third party's testimony about the declarant's out-of-court identification. The statute does not expressly require the declarant to testify on the out-of-court identification before a third party may testify about that identification. This court may not add a requirement for the order of the witness' testimony when it is not found in the plain language of the statute. See *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005) (in construing a statute, a court may not add new provisions that depart from the plain meaning of the statutory language). In sum, the language of section 115–12 is plain and unambiguous, and it does not require a declarant to testify to the out-of-court identification before a third party may offer testimony on that matter.

As noted, *Bradley* and *Stackhouse* have held that section 115–12 requires a declarant to testify on his or her out-of-court identification before a third party may testify about that identification. *Bradley* and *Stackhouse* conflict with our holding that the plain language of section 115–12 does not impose a requirement concerning the order of the witness' testimony. Accordingly, we hereby overrule *Bradley* and *Stackhouse* to the extent that those cases conflict with our decision.

We now turn to the application of section 115–12 to the facts of this case. Defendant contends that Heinlen's testimony was not admissible under section 115–12 because Clem was not subject to cross-examination on the statement. According to defendant, Clem was not available for cross-examination on her out-of-court identification because the State failed to raise this issue on direct examination and the scope of cross-examination is limited to the subject matter on direct. Defendant was, therefore, precluded from cross-examining Clem on her out-of-court identification.

The State responds that Clem was available for cross-examination on her out-of-court identification of defendant because she could have been recalled to testify after Heinlen testified about the identification. The State also argues that defendant could have cross-examined Clem about her out-of-court identification after she testified for the State. According to the State, defendant would not have been restricted by the scope of direct examination on the critical issue of the accuracy of the identification.

We agree with the State that Clem was "subject to cross-examination concerning the statement" as required by section 115–12. First, Clem was available to be cross-examined about her out-of-court identification after the State concluded its direct examination. On this point, we note that section 115–12 is based upon Federal Rule of Evidence 801(d)(1)(C). M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.16, at 468 (8th ed. 2004). In construing Federal Rule 801(d)(1)(C), the Supreme Court has held that a witness is "subject to cross-examination" when he or she is placed on the witness stand, under oath, and responds willingly to questions. *United States v. Owens*, 484 U.S. 554, 561, 98 L. Ed. 2d 951, 959, 108 S. Ct. 838, 844 (1988). Here, Clem was placed on the witness stand, was under oath, and responded willingly to questions.

Defendant, nonetheless, argues that he was prevented from cross-examining Clem about her out-of-court identification because it was not raised by the State on direct examination. Although the scope of cross-examination is generally limited to the subject matter of direct examination and to matters affecting the witness' credibility, this limitation is construed liberally to permit inquiry into subjects tending to explain, discredit, or destroy the witness' direct testimony. *People v. Terrell*, 185 Ill. 2d 467, 498 (1998). When the principal issue is the identification of the accused, the defendant will be given wide latitude to question the identifying witness on any matter explaining, modifying, or discrediting the witness' testimony. *People v. Morris*, 30 Ill. 2d 406, 409 (1964).

Here, defendant did not attempt to cross-examine Clem on her out-of-court identification. Defendant cannot now claim he would not have been permitted to question her on that subject, particularly given this court's case law allowing cross-examination of an identifying witness on all matters that may explain, modify, or discredit the identification. If the trial court had been given the opportunity to apply our case law, defendant should have been allowed to question Clem on her out-of-court identification because that subject is directly relevant to challenging the identification made from the witness stand. We, therefore, reject defendant's argument that he was precluded from cross-examining Clem on her out-of-court identification because it was beyond the scope of direct examination.

We acknowledge that defendant may have declined to question Clem on her out-of-court identification based on trial strategy.

Defendant may have decided not to address this issue given that the State did not raise it on direct examination and Clem's out-of-court identification may not have been helpful to his defense. Defendant, nevertheless, had the opportunity to cross-examine Clem on this issue. An opportunity to cross-examine on the issue is all that is required under section 115–12(b).

Moreover, even if defendant initially declined to cross-examine Clem on her out-of-court identification based on trial strategy, he could have recalled Clem for cross-examination after Detective Heinlen testified about that identification. The decision whether to allow a witness to be recalled is within the discretion of the trial court. *People v. Cobb*, 97 Ill. 2d 465, 480 (1983). It is an abuse of discretion, however, for the trial court to deny a request to recall a witness when the denial will deprive the defendant of an opportunity to present evidence crucial to the defense. *Cobb*, 97 Ill. 2d at 480-81; *People v. Gray*, 209 Ill. App. 3d 407, 414 (1991).

Here, the record shows that the identification of defendant was the critical issue in this case. Given the crucial nature of this evidence, it would have been an abuse of discretion for the trial court to deny defendant's request to recall Clem to cross-examine her on her out-of-court identification. Further, as previously noted, there is no order-of-testimony requirement in section 115–12. The fact that Clem would not have testified on her out-of-court identification of defendant before Heinlen testified about that identification does not preclude admission of Heinlen's testimony under section 115–12.

In sum, we conclude that Clem was subject to cross-examination on her out-of-court identification of defendant as required by section 115–12. The trial court did not err in admitting Detective Heinlen's testimony on the out-of-court identification.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court affirming the judgment of the circuit court.

*Affirmed.*