FIRST DIVISION
May 12, 2008

No. 1-06-3172

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WESLEY, | ) | Honorable |
| | ) | Michael Brown, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

Following a jury trial, defendant Andrew Wesley was convicted of two counts of first-degree murder and sentenced to a 55-year prison term. On appeal, he contends: (1) the State failed to prove its case beyond a reasonable doubt; (2) his constitutional right to confrontation was violated; and (3) one of his convictions for first degree murder must be vacated under the one-act, one-crime rule. We affirm, but amend the mittimus to reflect only one conviction of first-degree murder.

FACTS

On May 15, 2005, Leroy Graham and the victim, Malik Jones, began arguing over whether Jones could continue to sell marijuana at the parking lot of the Three Stooges liquor store. While the two men argued, a group of people gathered around them. When Jones turned and started to walk away, a black man wearing a black "hoodie" with braids in his hair stepped out of the crowd

and shot Graham five to six times.  Jones died as a result of the gunshot wounds.  Four eyewitnesses subsequently identified defendant as the shooter.

On July 11, 2005, defendant was arrested for Jones' murder. Detective Patrick Golden interviewed defendant on July 12, 2005. After waiving his Miranda rights, defendant told Detective Golden that he was not Graham's friend and that he was not at the Three Stooges liquor store when defendant was shot.  During his second interview, defendant again denied any knowledge regarding Jones' shooting.  Following Deborah Johnson's and Gregory Jenkins' line-up identification of defendant as the shooter, Detective Golden re-interviewed defendant.  Detective Golden testified that during the third interview, he "advised [defendant] that several individuals had identified him as the shooter."  At that point, defendant admitted he was untruthful in his first two initial statements.

Defendant admitted to Detective Golden that he was present at the Three Stooges liquor store and witnessed the fight between Graham and Jones.  Defendant was standing next to Graham until he went into the liquor store twice.  When defendant came out of the liquor store for the second time, he saw Deborah Johnson attempting to get Jones to leave the crowd "when an unknown individual approached out of the crowd who had a black hoodie

sweatshirt on, raised his arm, produced a handgun, and shot [the victim] five to six times." Defendant told everyone to leave the parking lot before the police arrived. Defendant denied he shot Jones. Defendant admitted he wore braids in his hair at the time of the murder.

Assistant State's Attorney Bryan Hofeld also interviewed defendant. Defendant told ASA Hofeld that he was at the Three Stooges liquor store when the shooting occurred. Defendant was unable to see who the shooter was. When ASA Hofled asked why defendant would lie to the police if he was not involved in the shooting, and why people would identify defendant as the shooter if he was not the shooter, defendant was unable to offer an explanation.

The jury found defendant guilty of murder. He was sentenced to a 55-year prison term.

DECISION

I. Reasonable Doubt

Defendant contends the State failed to prove him guilty of first degree murder beyond a reasonable doubt. Specifically, defendant contends the State's eyewitnesses were incredible and provided inconsistent and contradictory testimony regarding the events surrounding the shooting.

On review, the relevant question is whether, viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. People v. Cunningham, 212 Ill. 2d 274, 278, 818 N.E.2d 304 (2004); People v. Ornelas, 295 Ill. App. 3d 1037, 1049, 693 N.E.2d 1247 (1998). It is the responsibility of the trier of fact to determine the credibility of witnesses and the weight to be given their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Williams, 193 Ill. 2d 306, 338, 739 N.E.2d 455 (2000). A criminal conviction will not be reversed unless the evidence is so improbable or unsatisfactory that a reasonable doubt of defendant's guilt is justified. People v. Moore, 171 Ill. 2d 74, 94, 662 N.E.2d 1215 (1996).

At trial, Deborah Johnson, the victim's girlfriend, testified she heard Graham say to defendant "gun that [expletive] down." Defendant was standing next to Graham. After Graham made the statement, Johnson saw defendant pull a gun from his waistband and shoot Jones six times. Johnson testified that after defendant shot Jones, she heard Graham say to him, "kill the rest of these [expletive]." Defendant did not shoot anyone else. Johnson denied Graham made any sort of gesture indicating defendant should shoot Jones, and denied that Graham pointed the gun. On cross-examination, however, Johnson said Graham "guided

[defendant's] hand to the level where Malik Jones was walking" but by the time defendant fired, Graham's hand was no longer on the gun. Johnson also admitted on cross-examination that she had initially told the police that her eight-year-old son was present when the shooting occurred, and that she lied to police when she told them she did not know what Graham and Jones were arguing about. Johnson did not hear Graham ask defendant whether defendant had his gun.

Demetrius Clair, a friend of the victim, testified he was standing next to Jones during Jones' argument with Graham. During the argument, "Leroy had his head down, and he looked at the guy with the black hoodie on, and he did a hand motion." Clair then saw defendant fade off into the crowd. Clair told Jones the defendant was "fittin' to go get a gun." Clair turned around, walked three step, and then heard 4 to 5 gunshots.

Gregory Jenkins testified that on May 28, 2005, he was arrested for possession of a controlled substance. Following his arrest, he was interviewed by Detective Kevin Bor and ASA Hofeld. Jenkins said he gave the police information regarding the victim's murder so the charge would be dismissed. Although Jenkins acknowledged he gave a written statement regarding the murder, he said the statements contained in his handwritten statement were not true.

The State was allowed to read Jenkins prior statement into evidence. According to his statement, Jenkins was in Marcus Scott's car drinking when he saw Jones and Graham arguing across the parking lot. Jenkins heard Graham turn to defendant and say, "Go get that." Jenkins saw defendant walk towards the liquor store while Jones and Graham continued to argue. When Jones turned and began walking away, defendant walked out of the liquor store and Graham pointed at Jones. Defendant then pulled a gun out of his waistband and shot Jones six to seven times. Jenkins testified to the same facts before the grand jury. During his grand jury testimony, Jenkins also testified that "[Jones] told Andrew to do something, and he did so by making a hand movement and that's when Drew walked somewhere around the liquor store." Jenkins was serving a two-year sentence for delivery of a controlled substance at the time of his testimony.

Marcus Scott testified that he was arrested for drug conspiracy on September 14, 2005. Following his arrest, Scott met with the police and Assistant State's Attorney Kim Ward. Although Scott denied he was present at the shooting during defendant's trial, he admitted he signed each page of the statement he made to the police.

The State was allowed to read Scott's prior statement into evidence. According to his statement, Scott saw defendant come

out of the liquor store and shoot Jones numerous times. Marcus admitted he testified to the same facts before the grand jury. Marcus said that Assistant State's Attorney Shelly Keane told him to testify to these facts and if he did, his drug conspiracy charge would be dismissed.

Contrary to defendant's contention, we find the eyewitnesses testimony presented by the State identifying defendant as the shooter, mixed with defendant's acknowledgment that he was present when the murder occurred, could establish defendant's guilt beyond a reasonable doubt. Although the witnesses' accounts of the location of the shooter and what Graham said prior to the shooting varied slightly, the witnesses were consistent in identifying defendant as the shooter. "Minor inconsistencies in testimony do not, by themselves, create a reasonable doubt." People v. Cunningham, 309 Ill. App. 3d 824, 827 (1999). Viewing the evidence in the light most favorable to the prosecution, we cannot say the evidence is so improbable or unsatisfactory that a reasonable doubt of defendant's guilt remains as a matter of law.

II. Right to Confrontation

Defendant contends his conviction must be reversed and remanded for a new trial because the State introduced inadmissible hearsay evidence, in violation of his sixth

1-06-3172

amendment right to confrontation.  Specifically, defendant contends Marcus Scott's, Detective Golden's, and ASA Hofeld's testimony that "several individuals" identified defendant as the shooter amounted to inadmissible hearsay evidence in violation of his right to confrontation.

Defendant does not contend the allegedly inappropriate hearsay statements admitted at trial violated Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  Instead, he contends the hearsay statements simply violated his right of confrontation.  Recently, however, the U.S. Supreme Court clarified that the rule delineated in Crawford is the only rule governing Confrontation Clause protection.  See Whorton v. Bockting, __ U.S. __, 127 S. Ct 1173, 113, 167 L. Ed. 2d 1 (2007)("But whatever improvement in reliability Crawford produced in this respect must be considered together with Crawford's elimination of Confrontation Clause protection against the admission of unreliable out-of-court nontestimonial statements.  Under Roberts, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under Crawford, on the other hand, the Confrontation Clause has no application to such statements and therefor permits their admission even if they lack indicia of reliability.")  Because

1-06-3172

defendant chose not to challenge the statements under Crawford, we find the Confrontation Clause has no application to the statements challenged in this case.

We also find defendant forfeited his contention that the witnesses' testimony regarding "several individuals" identifying defendant as the shooter amounted to inadmissible hearsay. Defendant admits he did not object to the witnesses' complained of testimony at trial, and he did not raise the issue in his post-trial motion.

Defendant attempts to circumvent forfeiture by contending the inadmissible hearsay testimony admitted in this case amounted to plain error. The plain error doctrine allows a court to address a forfeited error affecting substantial rights in two instances: (1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error, and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial. People v. Herron, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005). The evidence in this case was not closely balanced, however. Four eyewitnesses identified defendant as the shooter, and defendant admitted he was present when the murder occurred. Moreover, the alleged evidentiary errors were not so serious as to deny defendant a right to a fair trial.

1-06-3172

Alternatively, defendant contends his trial counsel was ineffective for failing to properly preserve the alleged errors. See People v. Jura, 352 Ill. App. 3d 1080, 1093-94, 817 N.E.2d 968 (2004) (defense counsel's failure to challenge the admissibility of the various hearsay statements prejudiced the defendant and deprived him of a fair trial).

The only complained of testimony we take issue with in this case is the allegedly improper hearsay statement contained in Marcus Scott's handwritten statement. In the handwritten statement, Scott said Brandon Foster, who was Graham's "right hand man," approached him and said that three people had identified defendant as the shooter, and that "they better hope that [Graham] doe[sn't] find out" who identified defendant. The complained of portion of Scott's statement is inadmissible hearsay. The trial court, however, decided to allow that portion of the statement into evidence with a limiting instruction informing the jury that they were to consider it only "for the limited purpose of what was on [sic] the witness's state of mind and his motive for testifying and any interest or bias he has for the testimony that he has in the courtroom," and "not to take it as fact that Graham set these things in motion, but only the limited purpose of the witnesses credibility on the stand." We find any prejudice caused by the statement was cured by the trial

1-06-3172

court's limiting instruction.  <u>People v. Simms</u>, 285 Ill. App. 3d 598, 609, 673 N.E.2d 1119 (1996).

III. Mittimus

Defendant contends, and the State agrees, his mittimus should be corrected to reflect only one conviction for first degree murder.  Pursuant to the one act, one crime rule, defendant could only be convicted once for the murder of Malik Jones.  See <u>People v. Kuntu</u>, 196 Ill. 2d 105, 130, 752 N.E.2d 380 (2001).  Accordingly, we amend the mittimus to reflect only one conviction for first degree murder.  <u>People v. Bishop</u>, 218 Ill. 2d 232, 249, 843 N.E.2d 365 (2006).

CONCLUSION

We affirm the circuit court's judgment, but amend the mittimus to reflect only one conviction of murder.

Affirmed; mittimus amended.

CAHILL, P.J., and GARCIA, J., concur.