THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER W. OLSEN, Defendant-Appellant.

Second District    No. 2—07—0894

Opinion filed February 11, 2009.

O'MALLEY, J., specially concurring.

Michelle L. Moore, of Law Office of Michelle L. Moore, of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman and Steven J. Biagi, Assistant State's Attorneys, and Lawrence M. Bauer and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a bench trial, defendant, Roger W. Olsen, was convicted of driving with a blood alcohol level of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 2004)). On appeal, defendant argues that: (1) the State failed to lay a proper foundation for the admission of his blood test results; (2) the trial court erred in taking judicial notice of title 20, section 1286.40, of the Illinois Administrative Code (Administrative Code) (20 Ill. Adm. Code §1286.40 (Conway Greene CD-ROM June 2001)), which provides a conversion factor for blood serum alcohol concentration to whole blood alcohol concentration; and (3) he was not proven guilty beyond a reasonable doubt. We affirm.

## I. BACKGROUND

Defendant was charged initially in November 2004 with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 2004)) (count I) and failure to yield the right-of-way when turning left (625 ILCS 5/11—902 (West 2004)) (count II). On January 19, 2005, he filed a motion to dismiss the summary suspension of his driver's license, and the trial court granted the motion the following day.

On March 17, 2005, the State charged defendant with driving with a blood alcohol level of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 2004)) (count III). On May 18, 2005, defendant filed a motion to quash his arrest and suppress evidence, alleging that a police officer arrested him without probable cause to believe that he was under the influence of alcohol. The trial court granted the motion on February 24, 2006, though it also gave the State leave to subpoena defendant's medical records. The trial court subsequently denied the State's motion to reconsider its ruling.[1]

On February 5, 2007, the State filed a motion in limine for the trial court to take judicial notice of title 20, section 1286.40, of the Administrative Code. The trial court granted the motion on February 9, 2007.

Defendant's bench trial took place on February 13, 2007. Officer John Williams of the Elk Grove Village police department testified as follows. On November 5, 2004, at about 7:25 p.m., he was dispatched to a traffic accident. Defendant was sitting in the driver's seat of one of the cars involved, which had heavy front-end damage. The second

---

[1]Although the trial court granted defendant's motion to quash his arrest and suppress evidence, all charges against defendant still went to trial. The record does not contain a report of proceedings for the hearing on the motion to quash and suppress, though it appears from comments in later proceedings that a DUI kit was suppressed. In any event, the effect of the suppression ruling is not at issue on appeal.

car had heavy damage on the front passenger side. Officer Williams asked defendant to exit his car and walk about 20 feet to the side of the road. Defendant did not have any difficulty exiting the car, and Officer Williams did not notice anything unusual about the way he walked. Defendant said that he had been waiting in the middle of the intersection to make a left turn, and he did not see the other car. He also said that the other car must have been speeding and run a red light.

Defendant's breath had a strong odor of alcohol; his eyes were red, bloodshot, and somewhat glassy; he had a cut on his forehead; and he seemed somewhat confused. Defendant said that he had had two alcoholic drinks earlier that day. Due to the cut on defendant's face, Officer Williams did not ask him to take field sobriety tests. Instead, he called the paramedics, who transported defendant to the hospital. Officer Williams also went to the hospital and talked to defendant in the emergency room. Officer Williams left when defendant was admitted to the hospital, and he never asked hospital personnel to draw blood from defendant. At trial, Officer Williams opined that defendant failed to yield the right-of-way when making a left turn and that he was under the influence of alcohol.

Nicole Beatingo provided the following testimony. She was the manager of medical records and data retrieval at Alexian Brothers Medical Center. She had been working at the hospital for eight years and had held her current position for slightly under one year. Beatingo was in charge of the hospital's clerical section, which included "record retrieval, assembly, analysis and physician completion." She was familiar with the hospital's medical records, and she identified exhibit 1 as lab test results from defendant's medical file. The record was prepared by hospital personnel. It looked like normal lab documents from Alexian Brothers; it was "what the lab results look like when [they are] done in [Alexian Brothers'] facility and [are] interfaced into this electronic record." The record indicated that defendant came in on November 5, 2004, at 8 p.m., and the lab test results were entered into the chart at 9:01 p.m. The record was kept in the regular course of hospital business. The test result for defendant's alcohol ethanol serum was .190. In the normal course of business, the hospital's lab tested all the blood. However, when Beatingo was asked if she knew "where the blood in this case was sent to be tested," she replied in the negative.

The lab test results listed defendant's "ED physician," who was the doctor who saw him in the emergency room. The document also indicated that Dr. Thomas Snyder reviewed the results, though it did not show who ordered the test. Beatingo identified exhibit 2 as another

page from defendant's emergency room record that was kept in the ordinary course of business. It consisted of "nurses' notes *** as well as some physician documentation." The trial court allowed testimony on exhibit 2 for the limited purpose of establishing the foundational requirements that defendant's blood sample was taken for the purpose of medical treatment and relied upon by the doctor in treating defendant. Beatingo testified that the only physician listed in exhibit 2 as caring for defendant was Dr. Thomas Snyder, the same doctor noted on the lab report. Based on the reports, Beatingo did not know who had ordered the blood test.

The State moved to admit exhibits 1 and 2, and defendant objected based on a lack of foundation. He argued that there was no testimony as to where the lab tests were performed or who ordered the tests and that exhibit 2 was a confidential medical record not subject to the statutory exception for blood test results.

The trial court admitted the exhibits over defendant's objection, stating as follows. While Beatingo testified on the one hand that she did not know where defendant's blood was tested, she also testified that the record was of hospital lab test results. Still, the real question was "whether these are, in fact, medical records from Alexian Brother Medical Center, medical records generated by care and treatment of the person in question in the emergency room and in the course of treatment at that emergency room." Here, the records showed that defendant was a patient in the emergency room and that a blood sample was obtained from him and sent to the lab. Exhibit 2 indicated that this was done during the course of treating defendant. It showed that defendant was under the care of Dr. Snyder and that a nurse obtained the blood sample and sent it to the lab. The records also showed that the results were reviewed by Dr. Snyder about 40 minutes after the sample was obtained. The records appeared to be reliable and to satisfy the statutory foundational requirements for medical records and lab test results.

Defendant further objected to the court taking judicial notice of Title 20, section 1286.40, of the Administrative Code, arguing that the Department of State Police lacked the statutory authority to implement the regulation. The trial court overruled defendant's objection, largely based on language in *People v. Thoman*, 329 Ill. App. 3d 1216, 1220 (2002), which indicated that section 1286.40 was subject to judicial notice.

The trial court granted defendant's motion for a directed finding on counts I and II. After the defense rested without providing additional evidence, the trial court found defendant guilty of count III. Defendant filed a motion for a new trial on March 13, 2007, which the

trial court subsequently denied. It sentenced him to two years' conditional discharge and ordered alcohol counseling and fees. Defendant timely appealed.

## II. ANALYSIS

### A. Admissibility of Blood Test Results

Defendant first argues that the State failed to lay a proper foundation for the admission of his blood test results under section 11—501.4 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501.4 (West 2006)). Evidentiary rulings are within the trial court's discretion and will not be reversed absent a clear abuse of discretion. *People v. Wheeler*, 226 Ill. 2d 92, 132 (2007). To the extent that defendant's argument implicates the requirements of section 11—501.4, it presents a question of statutory interpretation, which we review *de novo*. *People v. Caballero*, 228 Ill. 2d 79, 82 (2008). Finally, we will accept any factual findings made by the trial court unless they are against the manifest weight of the evidence. See *People v. Montgomery*, 373 Ill. App. 3d 1104, 1122 (2007).

Section 11—501.4 provides in relevant part:

"(a) Notwithstanding any other provision of law, the results of blood tests performed for the purpose of determining the content of alcohol *** of an individual's blood conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961, when each of the following criteria are met:

(1) the chemical tests performed upon an individual's blood were ordered in the regular course of providing emergency medical treatment and not at the request of law enforcement authorities;

(2) the chemical tests performed upon an individual's blood were performed by the laboratory routinely used by the hospital; and

(3) results of chemical tests performed upon an individual's blood are admissible into evidence regardless of the time that the records were prepared.

(b) The confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to chemical tests performed upon an individual's blood under the provisions of this Section in prosecutions as specified in subsection (a) of this Section. No person shall be liable for civil damages as a result of the evidentiary use of chemical testing of an individual's

blood test results under this Section, or as a result of that person's testimony made available under this Section." 625 ILCS 5/11—501.4 (West 2006).

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent, which is best determined by the statutory language's plain and ordinary meaning. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). We will not depart from the statute's plain language by reading into the statute exceptions, limitations, or conditions that it does not express. *People v. Lewis*, 223 Ill. 2d 393, 402 (2006).

■ Defendant argues that, in order for a blood test result to be admitted under section 11—501.4, a "physician, nurse, or other person with actual knowledge of routine emergency room procedures and the treatment of the patient/defendant" must testify that the test was ordered in the regular course of providing emergency medical treatment. The statute's plain language requires only that: (1) the test was ordered in the regular course of providing emergency medical treatment and not at the request of law enforcement authorities; and (2) it was performed by the laboratory routinely used by the hospital. 625 ILCS 5/11—501.4 (West 2006). The question is therefore whether the evidence in this case satisfies this standard.

Here, regarding section 11—501.4's first requirement, Officer Williams testified that he called the paramedics to transport defendant to the hospital due to defendant's head injury, that he saw defendant being treated in the hospital's emergency room, and that defendant was admitted to the hospital. He also testified that he did not ask the hospital to draw defendant's blood. Beatingo testified that she was in charge of the hospital's clerical section and was familiar with its medical records. She identified exhibit 1 as lab test results from defendant's medical file, which were prepared by hospital personnel in the regular course of business. Beatingo testified that the document listed defendant's "ED physician," who was the doctor who saw him in the emergency room. We note that the exhibit lists "Thomas J. Snyder" next to this notation. Beatingo also testified that the exhibit showed that Dr. Snyder reviewed the results. The above testimony was evidence that defendant was receiving emergency medical treatment and that the blood test was ordered in the ordinary course of providing the medical treatment rather than at the request of law enforcement.

Regarding the statute's second requirement, that the blood test be performed at the lab the hospital routinely used, Beatingo testified that, in the normal course of business, the hospital's lab tested all blood, that defendant's blood test results looked like they came from

the hospital's lab, and that the results were entered into his chart about one hour after he arrived at the hospital. We recognize that she also testified that she did not know where the blood was sent to be tested, but it was up to the trial court, sitting as the trier of fact, to draw reasonable inferences from and resolve any conflicts in the evidence. See *People v. Wesley*, 382 Ill. App. 3d 588, 590 (2008). Considering all of the evidence, the trial court's ruling that the State satisfied the foundational requirements to admit defendant's blood test under section 11—501.4 was not an abuse of discretion.

The cases defendant relies on applied a previous version of the statute, which required that:

"(1) the blood alcohol tests *were ordered by a physician on duty* at the hospital emergency room and were performed in the regular course of providing emergency medical treatment *in order to assist the physician in diagnosis or treatment.*

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the written results of the blood alcohol tests were received and considered by the *physician* on duty at the hospital emergency room *to assist that physician in diagnosis or treatment.*" (Emphases added.) 625 ILCS 5/11—501.4 (West 1992).

The old requirements emphasized the role of the physician, so it is understandable that the testimony of the treating physician may have previously been considered "crucial." See *People v. Smith*, 248 Ill. App. 3d 351, 359-60 (1993) (threshold requirements for previous version of section 11—501.4 not satisfied where lab technician testified that she did not remember which doctor was on duty, did not know who ordered the test, and did not know if the results were reported to the doctor attending the defendant). In contrast, Officer Williams's and Beatingo's testimony was sufficient to satisfy the current standard for admissibility.

Defendant argues that section 8—802 of the Code of Civil Procedure (735 ILCS 5/8—802 (West 2006)) "further supports the proposition that §11—501.4 contemplates the testimony of a treating physician as necessary to lay the foundation for admission of a hospital blood test result in a DUI prosecution." Section 8—802 provides that a physician or surgeon may not disclose information obtained in treating a patient except in certain situations, such as when the results of a blood alcohol test are admissible under section 11—501.4. 735 ILCS 5/8—802 (West 2006). However, we agree with the State that, like section 11—501.4(b), which provides broad immunity from civil liability for the use of blood test results under that section, the portion of section 8—802 relied on by defendant simply reiterates that physicians

and surgeons will not be civilly liable for testifying under section 11—501.4. Neither statute requires that only physicians may testify as to the blood test results. We further note that defendant's reliance on section 8—802, which refers only to physicians and surgeons, also conflicts with defendant's initial argument that testimony may come from a "physician, *nurse, or other person* with actual knowledge of routine emergency room procedures and the treatment of the patient/defendant" (emphasis added).

Finally, defendant argues that the State could not cure any foundational defects by relying on exhibit 2, to which he objected. We considered only exhibit 1 in concluding that the trial court did not abuse its discretion in ruling that the State satisfied the foundational requirements of section 11—501.4, so, even if it improperly considered exhibit 2, it was harmless error.

### B. Section 1286.40 of Title 20 of the Administrative Code

Defendant next argues that the trial court erred in taking judicial notice of section 1286.40 of title 20 of the Administrative Code. That section, entitled "Conversion of a Blood Serum or Blood Plasma Alcohol Concentration to a Whole Blood Equivalent," states: "The blood serum or blood plasma alcohol concentration result will be divided by 1.18 to obtain a whole blood equivalent." 20 Ill. Adm. Code §1286.40 (Conway Greene CD-ROM June 2001). Defendant argues that the Department of State Police lacked the statutory authority to pass a regulation that blood serum test results are subject to a particular conversion factor. He further argues that section 1286.40 is not subject to judicial notice because the proper conversion factor is subject to dispute and that the regulation creates an improper irrebuttable presumption.

In taking judicial notice of section 1286.40, the trial court relied primarily on *Thoman*, 329 Ill. App. 3d at 1218. There, the State presented evidence that the defendant's blood serum had an alcohol concentration of 0.306, but it did not present any evidence as to the defendant's whole blood alcohol concentration or how the blood serum alcohol concentration could be converted to a whole blood alcohol concentration. *Thoman*, 329 Ill. App. 3d at 1218. The appellate court stated that evidence of a defendant's whole blood alcohol concentration may be obtained from either the results of a whole blood alcohol concentration test or the results of a blood serum alcohol concentration test converted into whole blood equivalents. *Thoman*, 329 Ill. App. 3d at 1218. It further stated that blood serum alcohol concentration test results are often 12% to 20% higher than whole blood alcohol concentration test results, so blood serum alcohol concentrations can

be divided by a corresponding factor between 1.12 and 1.20 to be converted to whole blood alcohol concentrations. *Thoman*, 329 Ill. App. 3d at 1218-19. Because the State had failed to present any evidence of the conversion factor, the *Thoman* court concluded that the State failed to prove beyond a reasonable doubt that the defendant's whole blood concentration was 0.08 or more. *Thoman*, 329 Ill. App. 3d at 1219-20. Particularly relevant to the instant case, the court stated, "The State could have proved the whole blood alcohol concentration through expert testimony regarding the conversion factor *or through asking the trial court to take judicial notice of, and instruct the jury on, the appropriate conversion factor. See, e.g., 20 Ill. Adm. Code §1286.40 (2001).* It did neither." (Emphasis added.) *Thoman*, 329 Ill. App. 3d at 1220.

Our research has revealed only two other cases mentioning section 1286.40. In *Petraski v. Thedos*, 382 Ill. App. 3d 22, 25 (2008), the defendants provided an offer of proof of their expert's opinion that the plaintiff was intoxicated. The expert would testify that he converted the plaintiff's blood serum alcohol level to a whole blood alcohol level by using a 1.18 conversion factor, "according to statute or regulation." *Petraski*, 382 Ill. App. 3d at 25. He would also testify that conversion factors typically range from 1.09 to 1.22, but, even using a factor as high as 1.25, the plaintiff's blood level would exceed the 0.08 statutory presumptive level of intoxication. *Petraski*, 382 Ill. App. 3d at 26. In commenting on the expert's use of the 1.18 conversion factor, the appellate court stated that the factor came from section 1286.40, which was "part of a set of regulations to implement the sections of the Illinois Vehicle Code that govern the offense of driving under the influence." *Petraski*, 382 Ill. App. 3d at 29.

In *People v. Stipp*, 349 Ill. App. 3d 955, 956-57 (2004), the State took the position that section 1286.40 made it unnecessary for an expert to testify to a conversion factor. The parties then stipulated that they would apply the 1.18 conversion factor. *Stipp*, 349 Ill. App. 3d at 957.

While *Thoman* directly states that a trial court may take judicial notice of section 1286.40, *Petraski* states that the regulation implements sections of the Vehicle Code, and the parties in *Stipp* agreed to apply the 1.18 factor, none of the cases addressed whether creating the regulation was within the power of the Department of State Police. Accordingly, we examine defendant's argument further.

The legislature is vested with the sovereign power to make laws, and it cannot delegate this power to an administrative body. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 423 (1997).

Still, while the legislature must determine what the law should be, it may delegate the authority to *execute* the law. *East St. Louis Federation of Teachers*, 178 Ill. 2d at 423; see also *Hill v. Relyea*, 34 Ill. 2d 552, 555 (1966) (the legislature "may delegate to others the authority to do those things which the legislature might properly do, but cannot do as understandingly or advantageously"). It may even give limited discretion to the administrative body designated to implement the legislation. *Chicagoland Chamber of Commerce v. Pappas*, 378 Ill. App. 3d 334, 348 (2007); see also *Department of Transportation v. Keller Development Corp.*, 122 Ill. App. 3d 1038, 1041 (1984) (the legislature "may confer upon administrative authorities the power to enact rules and regulations to promote the purpose and spirit of the legislation and carry it into effect"). The legislature's ability to delegate authority to execute the law comes from its own authority to pass any law on any given subject; the administrative agency "essentially amounts to a tool in the hands of the legislature." *Chicagoland Chamber of Commerce*, 378 Ill. App. 3d at 350.

The legislature must provide sufficient standards to guide the administrative body in exercising its functions, but it need not establish every detail necessary to enforce the law. Instead, the legislature need only provide intelligible standards to guide the agency. *East St. Louis Federation of Teachers*, 178 Ill. 2d at 423. The "precision of the permissible standard must necessarily vary according to the nature of the ultimate objective and the problems involved." *Hill*, 34 Ill. 2d at 555. Delegation is improper only where the legislature gives the administrative body so much discretion that the administrative body may effectively make the law itself. *Chicagoland Chamber of Commerce*, 378 Ill. App. 3d at 349.

Defendant argues that the Department of State Police lacked the authority to pass section 1286.40. Part 1286 of the Administrative Code, entitled "Testing of breath, blood and urine for alcohol, other drugs, and intoxicating compounds," states that its provisions are authorized by and implement sections 6—106.1a, 11—501.2, 11—501.5, 11—501.6, and 11—501.8 of the Vehicle Code (625 ILCS 5/6—106.1a, 11—501.2, 11—501.5, 11—501.6, 11—501.8 (West 2000)); section 5—7.5 of the Snowmobile Registration and Safety Act (625 ILCS 40/5—7.5 (West 2000)); and sections 5—16b and 6—1 of the Boat Registration and Safety Act (625 ILCS 45/5—16(b), 6—1 (West 2000)). 20 Ill. Adm. Code §1286 (Conway Greene CD-ROM June 2001).

Of the cited statutes, only section 11—501.2 of the Vehicle Code arguably provides the authorization for section 1286.40. Section 11—501.2 states in relevant part:

"(a) Upon the trial of any civil or criminal action or proceeding

arising out of an arrest for an offense as defined in Section 11—501 or a similar local ordinance or proceedings pursuant to Section 2—118.1, evidence of the concentration of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:

    1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to *standards* promulgated by the Department of State Police by a licensed physician, registered nurse, trained phlebotomist acting under the direction of a licensed physician, certified paramedic, or other individual possessing a valid permit issued by that Department for this purpose. *The Director of State Police is authorized to approve satisfactory techniques or methods*, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of that Department and to certify the accuracy of breath testing equipment. *The Department of State Police shall prescribe regulations as necessary to implement this Section.*" (Emphases added.) 625 ILCS 5/11—501.2(a) (West 2006).

■ Section 11—501.2(a) dictates, among other things, that evidence of a defendant's blood alcohol concentration is admissible in a trial for DUI. Case law provides that this includes evidence of a defendant's blood serum alcohol concentration. See *Thoman*, 329 Ill. App. 3d at 1218. However, because section 11—501.2(b)'s presumption of intoxication for blood alcohol levels of 0.08 or more applies only if evidence is provided of a whole blood alcohol concentration (see *People v. Green*, 294 Ill. App. 3d 139, 147 (1997)), and section 11—501(a)(1)'s criminalization of driving with a blood alcohol level of 0.08 or more also applies only to whole blood (*Thoman*, 329 Ill. App. 3d at 1219), evidence of a blood serum alcohol concentration is generally useful only if there is evidence of a conversion factor to a whole blood alcohol concentration (see *Thoman*, 329 Ill. App. 3d at 1219-20). Thus, given that blood serum evidence is admissible under section 11—501.2(a) but typically useful only if there is a factor to convert it to a whole blood alcohol concentration, we conclude that a regulation providing a conversion factor falls within the Department of State Police's authority to develop "standards" and "approve satisfactory techniques or methods" for the chemical analysis of blood and to "prescribe regulations as necessary to implement this Section." 625 ILCS 5/11—501.2(a)(1) (West 2006).

Defendant argues that allowing the Department of State Police to prescribe the conversion factor is an improper delegation of the legislature's law-making authority to an administrative agency. However, as the legislature has already set the legal blood alcohol level at below 0.08 and allowed for the admissibility of blood alcohol tests, the conversion factor is merely a means by which the Department of State Police is seeking to effectuate the law regarding the chemical analysis of blood, and its creation is not an improper delegation of lawmaking authority. As stated, the legislature need not establish every detail needed to enforce the law (see *East St. Louis Federation of Teachers*, 178 Ill. 2d at 423), and the conversion factor is such a detail here. *Cf. Hill*, 34 Ill. 2d at 556 (the legislature properly delegated to hospital superintendents the authority to discharge involuntarily committed patients "as the welfare of such person and the community may require").

We now turn to defendant's argument that, where several courts have recognized that there is an acceptable *range* of conversion factors, the proper conversion factor is subject to dispute and is not an appropriate subject for judicial notice. Defendant maintains that section 1286.40 therefore violates the separation of powers clause of the Illinois Constitution and the confrontation clauses of the Illinois and United States Constitutions because the legislature is not empowered to state what shall be conclusive evidence of any fact at issue in a judicial proceeding and because the Department of State Police had no authority to establish an irrebuttable evidentiary standard for the conversion factor. Defendant states that, "[w]hile the legislature is certainly empowered to enact a statute providing that the court *may* apply a conversion factor of 1.18 to convert serum blood results generated from a hospital emergency room blood test to whole blood equivalents, or establishing a rebuttable presumption as to the proper conversion factor, it has not done so." (Emphasis in original.)

We have already determined that the Department of State Police acted within its authority in providing a conversion factor. Furthermore, it is well established that a court may take judicial notice of an agency's rules and regulations. *Busch v. Bates*, 323 Ill. App. 3d 823, 832 (2001). Thus, the next question we must answer is whether the regulation in fact creates a mandatory presumption, rendering it unconstitutional. See *People v. Woodrum*, 223 Ill. 2d 286, 309 (2006) (mandatory presumptions, whether rebuttable or irrebuttable, are unconstitutional). Administrative regulations have the force of law, and we construe them under the same standards by which we construe statutes. *People v. Wilhelm*, 346 Ill. App. 3d 206, 208 (2004). Statutes and regulations are presumed constitutional, and we will interpret

them, where possible, to avoid a finding of unconstitutionality. *People ex rel. Harris v. Parrish Oil Production, Inc.*, 249 Ill. App. 3d 664, 668 (1993).

Again, section 1286.40 states: "The blood serum or blood plasma alcohol concentration result *will be* divided by 1.18 to obtain a whole blood equivalent." (Emphasis added.) 20 Ill. Adm. Code §1286.40 (Conway Greene CD-ROM June 2001). The use of the phrase "will be" would initially appear to indicate a mandatory requirement, just as does the use of the term "shall." See *Woodrum*, 223 Ill. 2d at 310 (term "shall" usually indicates a mandatory obligation). However, the term "shall" can be interpreted to be either mandatory or permissive. See *People v. Davis*, 93 Ill. 2d 155, 162 (1982) (interpreting "shall" as permissive). "Interpreting the use of 'shall' in statutes pertaining to criminal cases, our courts consider whether a mandatory reading would violate the constitutional principle of separation of powers." *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18, 30 (2003). We engage in such an analysis because it is the courts' duty to construe legislative acts to affirm their constitutionality and validity, if reasonably possible, and if the construction is doubtful the doubt will be resolved in favor of the challenged law's validity. *Davis*, 93 Ill. 2d at 161.

■ Here, we agree with defendant that a regulation that mandates the presumptive application of a particular conversion factor would be unconstitutional. See *Woodrum*, 223 Ill. 2d at 309. We presume that the Department of State Police intended to prescribe a valid regulation. See *Davis*, 93 Ill. 2d at 162. Therefore, just as the term "shall" may be construed as permissive rather than mandatory, here we will similarly construe the phrase "will be" as permissive rather than mandatory, thereby rendering the regulation constitutional. Thus, while a trial court may take judicial notice of section 1286.40, the application of the 1.18 conversion factor is not a mandatory presumption, but rather a permissive presumption that the trial court need not accept.

The special concurrence in this case argues that we are deciding this appeal "based on a permissive-mandatory distinction argument the State did not raise and defendant had no opportunity to answer" and that a harmless-error analysis is more appropriate. 388 Ill. App. 3d at 719. While the State did not directly argue the permissive-mandatory distinction, it is questionable whether defendant would have chosen to respond to the argument given that he chose not to file a reply brief in the first place. The special concurrence's position is also curious given that our resolution of the matter directly addresses the question defendant did raise—whether section 1286.40 creates an

unconstitutional mandatory presumption—whereas the special concurrence's harmless-error analysis sidesteps the issue.

More importantly, we believe that the proposed harmless-error analysis is improper under the facts of this case. The special concurrence relies on *Woodrum*, 223 Ill. 2d at 315, for the proposition that we can consider an unconstitutional evidentiary presumption harmless error on appeal if the evidence established the presumed fact beyond a reasonable doubt, independently of the presumption. In *Woodrum*, the supreme court determined that an unconstitutional mandatory presumption could be severed from the remainder of the statute. *Woodrum*, 223 Ill. 2d at 314; see also *People v. Jordan*, 218 Ill. 2d 255, 267 (2006) ("A statutory provision containing an unconstitutional presumption may be severed from the rest of the statute when what remains is complete in itself and is capable of being executed wholly independently of the severed portion"). The supreme court then held that the application of the presumption was harmless error because there was *independent* trial evidence in the form of the defendant's statement to police and testimony regarding his conduct that overwhelmingly established the element at issue. *Woodrum*, 223 Ill. 2d at 315. Here, in contrast, there was no expert or other *independent* trial evidence of a conversion factor beyond the regulation that defendant argues is an unconstitutional presumption. The special concurrence seeks to categorize section 1286.40 as both a presumption and independent evidence that the 1.18 conversion factor is valid, which *Woodrum* does not support. On the other hand, our approach applies rules of statutory construction to conclusively determine the constitutionality of section 1286.40.

## C. Sufficiency of the Evidence

Last, defendant argues that there was insufficient evidence to prove him guilty beyond a reasonable doubt of driving with a blood alcohol level of 0.08 or more. For a claim of insufficient evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

Defendant's sole argument on this issue is premised upon his previous two arguments. Defendant maintains that the trial court erred in admitting the blood test results without a proper foundation and in taking judicial notice of section 1286.40, leaving the remainder of the evidence insufficient to prove him guilty beyond a reasonable doubt. As we have determined that the trial court acted within its

discretion in admitting the blood test results and did not err in taking judicial notice of section 1286.40, it follows that defendant's sufficiency-of-the-evidence argument is without merit.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Du Page County circuit court.

Affirmed.

SCHOSTOK, J., concurs.

JUSTICE O'MALLEY, specially concurring:

The majority decides this appeal based on a permissive-mandatory distinction argument the State did not raise and defendant had no opportunity to answer. The majority dismisses this concern with the startlingly circular rationalization that "it is questionable whether defendant would have chosen to respond to the argument given that he chose not to file a reply brief in the first place." 388 Ill. App. 3d at 717. Needless to say, I do not share the majority's sentiment. I would instead decide the case based on harmless error—an issue the State raised and that defendant had the choice to argue. See *VG Marina Management Corp. v. Wiener*, 225 Ill. 2d 594 (2007) (denying leave to appeal but ordering that the appellate court, which had decided the case on an issue not raised in the briefs, vacate its judgment and order supplemental briefing as had been suggested by the appellate court dissent).

To the majority's accusation that I am "sidestep[ping]" the mandatory-presumption issue (388 Ill. App. 3d at 718), I can respond only that I, unlike the majority, would decide the case based on the arguments actually presented by the parties, and I directly address those arguments. The permissive-mandatory distinction is one of any number of issues the parties did not raise; I would hardly consider my declining to discuss those issues to be "sidestepping." If anything, it is the majority, not I, who has stepped from the path laid out by the parties' briefs.

Defendant argues that the trial court's use of the 1.18 conversion factor was error, but, in his brief, he argues that any conversion factor between 1.10 and 1.20 would have been appropriate. As the State notes in its brief, even a 1.20 factor—the factor most favorable to defendant within the range identified by defendant—would have yielded a whole blood alcohol result over the legal limit. Thus, no conversion factor that defendant could have presented would have exculpated him.

Of course, even if any acceptable conversion factor would have resulted in conviction, the State was still required to present some evidence of a conversion factor, lest it fail to satisfy its burden to prove defendant guilty beyond a reasonable doubt. See *Thoman*, 329 Ill. App. 3d at 1219-20 (where State presented no evidence of a conversion factor, the error could not be considered harmless on appeal). However, even assuming that the regulation at issue here contains an unconstitutional presumption, and even further assuming that the trial court impermissibly relied on the unconstitutional presumption, I would still hold that the State presented evidence of a conversion factor sufficient to trigger the harmless-error rule on appeal.

Our supreme court has held that an unconstitutional evidentiary presumption may be considered harmless error on appeal where the evidence established the presumed fact beyond a reasonable doubt independently of the presumption. *Woodrum*, 223 Ill. 2d at 315. Here, if we strip the regulation of any power to mandate an evidentiary presumption, it still stands as nonbinding evidence of a proper conversion factor, just as expert testimony or a regulation from another jurisdiction would. See *Thoman*, 329 Ill. App. 3d at 1220 (equating judicial notice of the regulation with presentation of expert testimony by saying, "The State could have proved the whole blood alcohol concentration through expert testimony *** or through asking the trial court to take judicial notice of, and instruct the jury on, the appropriate conversion factor"). Although the supreme court in *Woodrum* severed and struck down the portion of the statute creating the unconstitutional presumption in that case (a perhaps unavoidable result, since the offending language explicitly required that certain evidence " 'shall be *prima facie* evidence of' " an element of a crime (see *Woodrum*, 223 Ill. 2d at 309, quoting 720 ILCS 5/10—5(b)(10) (West 1998))), defendant here urges only that the regulation cannot be afforded the power to create a mandatory evidentiary presumption. Even if I were to fully accept defendant's argument on this point, I would still consider the regulation evidence of a conversion factor, independent of any impermissible presumption it might contain.

In arguing that the regulation cannot serve as evidence, the majority emphasizes its view that *Woodrum* requires "*independent* trial evidence of a conversion factor beyond the regulation." (Emphasis in original.) 388 Ill. App. 3d at 718. The majority rewrites *Woodrum*, which actually says that an impermissible presumption may be deemed harmless where the evidence established guilt "independently of the *presumption*." (Emphasis added.) *Woodrum*, 223 Ill. 2d at 315. Again, if the regulation were stripped of any presumption, it would nevertheless serve as evidence *independent* of any presumption. The majority's

only response to this point is its conclusory statement that "*Woodrum* does not support" my view. 388 Ill. App. 3d at 718. I think my view is consistent with the actual language of *Woodrum*.

Based on the above discussion, I would hold that any error in failing to consider other conversion factors was harmless.