NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230917-U

NO. 4-23-0917

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 27, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| LEONARD E. JOHNSON, | ) | No. 20CF731 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, finding (1) the trial court did not abuse its discretion
in admitting the victims' hearsay statements at trial and (2) defendant's guilt was
proven beyond a reasonable doubt with respect to count IV of predatory criminal
sexual assault of a child.

¶ 2     Defendant, Leonard E. Johnson, was convicted by a jury of four counts of

predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) and one

count of sexual exploitation of a child (*id.* § 11-9.1(a)(1)). He was mandatorily sentenced to

natural life without parole for the predatory criminal sexual assault of a child convictions and

given an additional three years for the sexual exploitation conviction. On appeal, he argues (1) he

was denied the right to a fair trial when out-of-court statements were admitted at trial pursuant to

section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West

2022)) and (2) he was not proven guilty beyond a reasonable doubt with respect to count IV, predatory criminal sexual assault of the minor, A.S.

¶ 3        We affirm.

¶ 4                        I. BACKGROUND

¶ 5        In May 2020, Kristina S. and Dirk S., spouses at the time, learned of a possible incident of sexual abuse of their daughters, T.S. (seven years old at the time) and A.S. (six years old at the time) by Kristina's uncle, defendant. They contacted the police, and the girls were referred to the Child Advocacy Center of Northeast Missouri (CAC) to be interviewed. Both girls were interviewed by a forensic interviewer, Jessica Homeyer, in June 2020. A.S. was interviewed by Homeyer a second time in September 2020. All three CAC interviews were recorded. Neither child was ever interviewed by any police officer, and Kristina stated she did not speak to the girls about the incident again except to tell them, in response to their inquiries, that defendant would not be returning to the house.

¶ 6        Defendant was arrested in July 2020 and charged with four counts of predatory criminal sexual assault of a child and one count of sexual exploitation of a child. Three of the predatory criminal sexual assault of a child counts concerned acts between defendant and T.S., and one concerned an act between defendant and A.S. The charge for sexual exploitation of a child was based on A.S.'s viewing of the acts between T.S. and defendant. Defendant was also charged with one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c) (West 2020)) for allegedly touching A.S.'s unclothed back for purposes of sexual gratification or arousal. This charge was later dropped.

¶ 7                        A. Pretrial

¶ 8        Prior to trial, the State filed a motion to introduce the following out-of-court statements made by T.S. and A.S. at trial: (1) those made to Kristina and Dirk at the family's home on May 25 and 26, 2020, (2) the recorded CAC videos from June 2020 for each child, and (3) A.S.'s recorded CAC interview from September 2020. The State sought to admit the statements pursuant to section 115-10 of the Code, which allows out-of-court statements made by victims of sex offenses who are under the age of 13 to be admitted if the statements provide sufficient safeguards of reliability and the child testifies. 725 ILCS 5/115-10(a)-(b) (West 2020).

¶ 9        At the hearing on the State's motion, Kristina testified that, in May 2020, she lived in Hannibal, Missouri, with her husband, Dirk; her daughter, T.S.; her son, J.S.; and Dirk's daughter from a previous relationship, A.S. At the time, T.S. was seven years old and A.S. was six. Defendant, Kristina's uncle, lived in Minnesota, but he would make frequent trips to Missouri during the COVID-19 shutdown to help Kristina with the children. He assisted with household chores, took the children to the park and for ice cream, and would occasionally take the children on trips to his home in Minnesota.

¶ 10        On May 19, 2020, defendant took T.S. and A.S. to spend the night at a hotel in Quincy, Illinois. Defendant returned the girls to Hannibal the following day and then returned to Minnesota. A few nights later, on May 25, T.S. entered her parents' bedroom and told them she had a secret she was not supposed to tell. She stated she did not want to get herself or anyone else in trouble, but she had questions and was unsure how she felt about some things. After her parents assured her they would not be mad, T.S. stated she and A.S licked and touched defendant while at the hotel in Quincy. As she spoke, she gestured down the front of her body toward her vaginal area, indicating where on defendant's body she and A.S. made contact.

¶ 11        Kristina and Dirk reassured T.S. she was not in trouble and sent her back to her room. They then called in their other children, J.S. and A.S., and asked them if they had anything they wanted to tell them. Both children denied having anything to share, though Kristina felt A.S. "shuffled around the question" and appeared to be withholding information.

¶ 12        The following morning, Kristina again broached the subject with her children. Sitting at the kitchen table with all three children, she reiterated that she loved them, no one would get in trouble, and she only needed to know the truth. Regardless of what the children told her, she promised they would all go get ice cream together afterwards and have a good day. According to Kristina's account, A.S. again stated she was not "sure if there was anything she was supposed to remember." At this point, T.S. informed A.S. that she had already spoken to her parents about what happened "in the bath tub and at the hotel" and did not get in trouble, so A.S. should tell the truth. A.S. then told Kristina that she and T.S. had taken off defendant's pants and A.S. held his "private parts." She stated she and T.S. licked defendant's penis and that it got bigger and "stuff" came out. T.S. voiced her agreement and, according to Kristina, stated, "[Y]eah, he said it gets bigger." Kristina thanked the children and ended the conversation.

¶ 13        Jessica Homeyer also testified at the hearing. She discussed her qualifications, including past degrees and training, and the methods she uses when interviewing children. She characterized her methods as being focused on the needs of the child and not those of the parents, courts, or police. She identified People's exhibit Nos. 2, 3, and 4 as recordings of the interviews she conducted with T.S. and A.S. Those recordings were then played for the trial court.

¶ 14        In T.S.'s interview from June 2020, she told Homeyer that defendant is her "uncle" and expressed fondness for him. She identified the hotel in Quincy and stated she, A.S., and defendant used the hot tub in the hotel room together. In the hot tub, she and A.S. took off

- 4 -

defendant's shorts. She "played" with defendant's penis, and both she and A.S. licked it and applied lotion in the general area of his genitals. At a later point in the interview, she stated she did not recall if A.S. did anything in the hot tub with defendant but added, "She could have been just licking the sweet part, saying it's chocolate, but that's all I think she was doing." This was a reference to an earlier statement she made regarding what defendant's penis tasted like. She recalled defendant telling her A.S. had performed oral sex on him while T.S. slept. In addition to the events that occurred at the hotel, she recounted similar events happening at their home while watching movies. She stated at multiple points during the interview that what occurred was not defendant's fault, but the fault of the girls, as defendant told them "not to do those things."

¶ 15     In A.S.'s first interview, when asked by Homeyer what she wanted to talk about, A.S. stated, "I did, like, the stuff maybe [T.S.] told you about." When asked by Homeyer for her own account of what happened, A.S. replied, "I don't know what I'm supposed to say." She stated only that she remembered being at a hotel with defendant. When Homeyer asked if she did not remember or she just did not want to talk about it, A.S. stated she did not remember. Homeyer then asked what A.S. believed T.S. spoke about and A.S. answered, "The gross stuff." Homeyer asked her to elaborate, and A.S. paused before saying, "I'm trying to think." A few seconds later, she asked, "And if I don't remember?" Homeyer told her she could come back to talk at a different time if she later remembered anything. A.S. finally stated the only "gross stuff" she could remember was when she and T.S. would pull defendant's pants down. She denied ever touching another person's "no-no area," her word for genitals. During the course of the interview, A.S. frequently took long pauses when discussing defendant and spoke more haltingly and quietly than while discussing other topics.

¶ 16    In A.S.'s second interview, she told Homeyer she had returned to talk about "what me and [defendant] did together." She again recounted going to the hotel with defendant and T.S., and stated T.S. had pulled down defendant's shorts while in the hot tub and attempted to sit on his lap. She again denied touching defendant except to put lotion on his back, arms, stomach, and feet. Homeyer asked A.S. about the "gross stuff" she mentioned in her last interview, and A.S. stated, "I don't want to talk about what happened when—other times when [T.S.] pulled his pants off." She stated she would find it easier to show what happened in the hot tub by using the anatomically correct dolls offered by Homeyer. With the dolls, she depicted T.S. performing oral sex on defendant.

¶ 17    During cross-examination, Homeyer stated the CAC does not utilize a truth/lie discussion in their interviews, which would include asking a child if the child understands the difference between the truth and a lie. She explained that this protocol is optional and tends to confuse younger children. She also explained why a child might delay disclosure, stating, "A lot of times children have barriers to disclosure. They care about the person. They don't want them to get into trouble. They don't know what's going to happen after and they may feel responsible for some of the things that they have done."

¶ 18    The trial court ruled all of T.S.'s out-of-court statements were admissible at trial. It found her statements were spontaneous and consistent, and she had a positive opinion of defendant, which would suggest she was not fabricating the events to hurt him. The court also found Homeyer had specific training in interviewing children and her questions were general enough not to suggest the child should answer in any particular way. The court did not rule on A.S.'s statements, but instead took them under advisement.

¶ 19        In a later order, the trial court found A.S.'s statements likewise to be admissible. With respect to the statements made to her parents in May, the court found the parents' questions to A.S. were general and not specific enough to be suggestive. The court again noted that all the family members had positive relationships with defendant at the time and there was no motive for any of them to fabricate the events. With A.S.'s young age, the court found it understandable that she would fear getting in trouble or have difficulty articulating what occurred, which may explain her initial denial that anything happened.

¶ 20        Regarding A.S.'s CAC interviews, the trial court stated Homeyer asked open-ended questions, confirmed with A.S. multiple times that something was true, and discouraged her from playing pretend with the dolls. Lending further reliability to A.S.'s statements is the fact that A.S. denied certain acts taking place when Homeyer asked her, suggesting she did not feel compelled to provide Homeyer the answers she might have felt she wanted. Further, A.S. displayed knowledge outside of what would be expected in a child of her age when she simulated oral sex using the dolls. The court acknowledged A.S.'s difficulty in discussing certain things and noted she appeared to find it easier to discuss T.S.'s interactions with defendant rather than her own. It found that all of her statements contained sufficient safeguards of reliability and could be admitted at trial.

¶ 21                                B. Trial

¶ 22        Defendant's trial began on January 9, 2023. T.S., 10 years old at the time, testified that she, A.S., and defendant traveled to a hotel in Quincy, where "bad stuff" happened in the room's hot tub. She stated all three of them were in the hot tub at the same time and again stated she took off defendant's pants. When asked what happened in the hot tub, T.S. stated, "Usually we would do stuff with like the penis." When asked who "we" referred to, T.S. replied, "Usually

it was me, but I remember some stuff would happen with [A.S.]." She again stated defendant told her A.S. "sucked on" his penis in her sleep and white stuff came out. She confirmed she performed oral sex on defendant at the hotel.

¶ 23 Kristina then testified. She repeated her account of the conversations she had with T.S. and A.S. on May 25 and 26, 2020. She stated she did not tell the girls what they should say in their interviews with Homeyer or in front of the court, only that they should be truthful. She stated neither girl had occasion to view pornography or, to her knowledge, would be familiar with male erections or ejaculation.

¶ 24 A.S., nine years old at the time, also testified. She stated defendant and T.S. had used the hot tub at the hotel, but she "didn't really go in that much." She acknowledged seeing T.S. touch defendant's penis with her hands but denied seeing her touch it with anything else. She showed extreme reluctance in answering questions, refusing three times to state what she witnessed between T.S. and defendant.

¶ 25 Jessica Homeyer testified as to her role with the CAC and identified the tapes containing the children's interviews. The tapes were played in their entirety for the jury.

¶ 26 Finally, defendant testified. He stated that the original plan was for him to travel alone to the hotel, where he would meet up with T.S., A.S., J.S., a neighbor, and the neighbor's son. It was planned that T.S., A.S., and J.S. would travel with the neighbor, but on the day of the trip, "the plans had changed," and defendant transported T.S. and A.S. in his car while J.S. stayed behind to travel later with the neighbor and the neighbor's son. Defendant made the hotel reservation for a suite (a configuration of two rooms with a kitchenette between them) for the neighbor and the children, but he did not plan on staying with them. He did not book a room for himself, stating that due to COVID-19, it was cheaper to book a room in person. Upon arriving at

the hotel, defendant discovered they had instead been given a room with a single king-sized bed and a hot tub. Although he did not complain during check-in, the hotel bill shows defendant received a credit of $25 for the incorrect room after he complained at check-out.

¶ 27        Defendant testified that after he and the girls arrived, the other members of the party called to say they were not coming. He decided to stay at the hotel for the night because he was tired and his legs hurt. He testified to having issues with his feet that resulted in swelling and pain, and he was concerned that he might have an accident if he attempted to drive. He recounted sitting with the girls in the parked car for two hours while deciding if he should make the 30-minute drive back to Hannibal. He did not call Kristina to inform her that he and the girls would not be staying in a suite as originally planned. Defendant denied ever using the room's hot tub or having any inappropriate contact with the girls.

¶ 28        The jury found defendant guilty of all counts. Defendant filed a *pro se* motion alleging ineffective assistance of counsel. At a hearing on the motion, the judge determined that defense counsel's actions were strategic decisions within the realm of trial strategy. Nevertheless, by the next hearing, defendant filed a letter with the trial court asking that his counsel be discharged and a public defender assigned to represent him. Defense counsel agreed that the relationship with defendant was irretrievably broken. The court allowed defense counsel to withdraw from the case and appointed a public defender to represent him.

¶ 29        Defendant's new attorney filed a posttrial motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. In this motion, counsel argued (1) the verdict was against the manifest weight of the evidence, (2) the trial court erred in granting the State's motion to introduce the victims' out-of-court statements, as the statements lacked sufficient safeguards of reliability, (3) the State made prejudicial and erroneous statements in closing

argument that prejudiced defendant's right to a fair trial, and (4) the court erred in granting defendant's *pro se* motion to dismiss his trial counsel. The motion was unsuccessful, and defendant was sentenced to a mandatory life sentence for his predatory criminal sexual assault of a child convictions, plus three years for the conviction for sexual exploitation of a minor, to run consecutively.

¶ 30        This appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32        Defendant raises two issues on appeal. First, he argues he was denied the right to a fair trial when A.S.'s out-of-court statements to Kristina on May 26, 2020, were admitted at trial. Second, he argues that he was not proven guilty beyond a reasonable doubt of count IV, wherein the State alleged he touched his penis to A.S.'s hands for purposes of sexual gratification.

¶ 33        First, as a preliminary matter, we address the State's argument that defendant failed to provide a sufficient record for review because, in his brief, he alternately refers to Kristina as A.S.'s "mother," and "step-mother." According to the State, this switching of terms renders defendant's brief incomprehensible and results in an insufficient record on appeal.

¶ 34        An appellant has the burden of providing a sufficiently complete record for review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, the State does not offer any authority for the proposition that imprecise descriptions should render a record insufficient for review. At most, it might be argued defendant's brief is unclear, but we do not find even this to be the case. Based on the evidence presented in the case, it is clear whom respondent is referring to in his brief when he references A.S.'s "mother." Kristina was a central witness in the case and A.S.'s biological mother was not involved. Further, in A.S.'s CAC interview, she herself refers

to Kristina as her mother and her biological mother as her "other mother." As a final matter, we note that despite asserting defendant's arguments are unclear due to his imprecise language, the State was nevertheless able to address the merits of each argument in its reply brief. We similarly do not find any difficulty in understanding defendant's arguments and do not find his word choice results in an insufficient record for review.

¶ 35                               A. Admissibility of A.S.'s Out-of-Court Statements

¶ 36          Defendant argues he was denied the right to a fair trial when the trial court admitted A.S.'s out-of-court statements to Kristina on May 26, 2020, pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2022)). He maintains the statements were unreliable because they were made after intervention by Kristina and T.S. He admits he may have forfeited this argument by failing to raise it in his posttrial motion. Specifically, his posttrial motion challenged the admission of the girls' CAC interviews in June and September 2020, but not the admission of the statements made by A.S. to Kristina in May 2020. Defendant nevertheless urges us to consider this argument under plain error review or as ineffective assistance of trial counsel.

¶ 37          To preserve an issue for review, it must be raised both at trial and in a subsequent posttrial motion. *People v. Lewis*, 223 Ill. 2d 393, 400 (2006). The purpose of this rule is to allow trial courts the opportunity to grant a new trial when warranted and to limit the issues presented on appeal to those deemed significant by trial counsel. *Id.*

¶ 38          We do not find defendant has forfeited this issue for review. Contrary to his assertion, this issue was clearly raised and defined in his posttrial motion. That motion states, in a section titled "Issue #2," "The court erred in granting the State's motion to introduce out of court statements pursuant to 725 ILCS 5/115-10. The hearsay statements lacked sufficient

- 11 -

reliability to be admissible at trial." This statement is not limited to the CAC interviews but applies to all of the girls' out-of-court statements admitted at trial pursuant to section 115-10.

¶ 39 Admittedly, at the hearing on defendant's motion, defense counsel appeared to limit this argument by stating that, of the statements admitted at trial, those made in June and September 2020 were unreliable. However, we do not find this statement prevents our review of the other out-of-court statements from the victims. Though he discussed only certain statements at the hearing, all the statements admitted pursuant to section 115-10 were identified as grounds of error in his posttrial motion. We find this sufficient to fulfill the stated purposes of the forfeiture rule to limit the issues on review and allow the trial court the opportunity to rule on the issues before moving them to the appellate process. *Id.* Indeed, at the hearing, while defense counsel focused on the statements of June and September 2020, the court nevertheless ruled that *all* of the girls' out-court-statements were properly admitted, not just those from June and September 2020. While defense counsel may have limited his discussion to certain statements, it appears that the trial court treated the issue as involving all the out-of-court statements admitted pursuant to section 115-10. We therefore find the issue was properly raised in defendant's posttrial motion and was not forfeited.

¶ 40 Because we do not find this issue forfeited, we will not review this issue by way of plain error or ineffective assistance of counsel but will instead address it directly.

¶ 41 Section 115-10 of the Code provides an exception to the general bar on hearsay. *People v. Simpkins*, 297 Ill. App. 3d 668, 676 (1998); 725 ILCS 5/115-10(a)(2) (West 2020). Pursuant to this section, out-of-court statements made by victims of certain sex crimes under the age of 13 "describing any complaint of such act or matter *** which is an element of an offense which is the subject of a prosecution for a sexual *** act" perpetrated upon a child may be

- 12 -

admitted. 725 ILCS 5/115-10(a)(2) (West 2020). Prior to admitting the statements, a hearing must be conducted to show "that the time, content, and circumstances of the statement[s] provide sufficient safeguards of reliability." *Id.* § 115-10(b)(1). Additionally, the child whose statements are admitted must either testify or be deemed unavailable, with corroborative evidence of the act which is the subject of the statements. *Id.* § 115-10(b)(2).

¶ 42    In determining whether a child's out-of-court statements are reliable pursuant to section 115-10, courts must consider the totality of the circumstances surrounding the statements. *Simpkins*, 297 Ill. App. 3d at 676. Factors guiding a court's analysis include "(1) the child's spontaneity and consistent repetition of the incident; (2) the child's mental state; (3) use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate." *Id.* The State bears the burden of showing that the child's statements were not the result of adult prompting or manipulation. *Id.* We review a trial court's decision to admit statements pursuant to section 115-10 for an abuse of discretion. *Id.*

¶ 43    Defendant contends the content, timing, and circumstances of A.S.'s statements to Kristina on May 26, 2020, lacked sufficient safeguards of reliability and rendered the statements inadmissible. He points to the fact that on May 25, 2020, A.S. denied having any secrets to tell her parents. Yet the following morning, she discussed holding defendant's penis in the hot tub. This statement came about only after what defendant characterizes as "adult intervention by Kristina and encouragement of her step-sister T.S." Defendant believes A.S. was motivated to lie to please her family members. He also notes that after being prompted to speak by her stepmother and stepsister, A.S. never repeated the statements she made on the morning of May 26, 2020, further casting doubt on their reliability.

¶ 44　　　　　In its written order, the trial court explained its reasoning behind admitting A.S.'s statements. It considered the nature of the statements made by Kristina and T.S. at the time of A.S.'s disclosure. At that time, Kristina assured her children that they were not in trouble and that no matter what either child told her, they would all go out to get ice cream afterward and have a great day. Similarly, T.S. assured A.S. that she had not gotten in trouble when she spoke to her parents the night before, and A.S. should feel comfortable telling her stepmother the truth. Neither Kristina nor T.S. supplied A.S. with specific statements to make or suggested negative consequences for failing to speak, suggesting to the court A.S. was not pressured or manipulated. Additionally, both the girls and Kristina felt positively toward defendant and lacked a motive to fabricate their statements. The court also noted that A.S.'s initial reluctance to speak and difficulty articulating what occurred could be explained by her young age. In short, the court considered the totality of the circumstances surrounding A.S.'s statements and interpreted them with an eye toward those guiding factors which tend to show reliability (a lack of motive to fabricate, the child's age, and the child's spontaneity). We therefore do not find that the trial court abused its discretion in concluding A.S.'s statements contained sufficient safeguards of reliability and were therefore admissible.

¶ 45　　　　　　　　　　　B. Sufficiency of the Evidence

¶ 46　　　　　Defendant next argues that, even if A.S.'s statements to her mother on May 26, 2020, were admissible, they were insufficient to prove him guilty beyond a reasonable doubt of count IV, touching his penis to A.S.'s hands for purposes of sexual gratification.

¶ 47　　　　　"The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 1970)). When reviewing a defendant's claim of insufficient evidence, we ask whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proven beyond a reasonable doubt. *Id.* Reviewing courts must not retry the defendant, but instead give great deference to the conclusions of the factfinder. *Id.* at 279-80. A defendant's conviction will not be overturned " 'unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt.' " *People v. Vannote*, 2012 IL App (4th) 100798, ¶ 47 (quoting *People v. Milligan*, 327 Ill. App. 3d 264, 267 (2002)).

¶ 48         Defendant was convicted of predatory criminal sexual assault of a child for knowingly touching his penis to A.S.'s hands for purposes of sexual gratification while he was over the age of 17 and A.S. was under the age of 13. On appeal, he does not appear to challenge the jury's finding that he was over the age of 17, that A.S. was under the age of 13, or that any contact between his penis and A.S.'s hands was knowing or for the purpose of sexual gratification. Rather, he argues the evidence was insufficient to prove that he touched his penis to A.S.'s hands at all. He argues the only evidence the act occurred was A.S.'s out-of-court statements to Kristina, which he again contends were prompted by others. He notes that there was no forensic evidence of the act, that A.S. recanted her accusations in her later interviews and testimony, and that T.S. denied A.S. touched defendant while in the hot tub in her trial testimony. Taken together, he argues these facts create a reasonable doubt as to his guilt.

¶ 49         First, we believe that defendant's presentation of the evidence is inaccurate. He states the only evidence he touched his penis to A.S.'s hands was the out-of-court statements made by A.S. to Kristina on May 26, 2020, which Kristina then testified to at trial. But this is

untrue. In A.S.'s first interview with Homeyer, she states she does not remember what happened with defendant at the hotel. However, in her next interview, she states she came to talk about "what me and [defendant] did together," adding, "Remember when I forgot what I was supposed to say last time?" These statements from her second interview suggest both that defendant engaged in inappropriate contact with A.S. and that A.S. was reluctant to discuss it, preferring to say she did not know or did not remember what happened.

¶ 50 Further, Kristina testified at trial that when T.S. first relayed to her and her stepfather on May 25, 2020, that an inappropriate incident had occurred with defendant, T.S. stated that "they" had kept secrets from the parents about times of licking and touching. Similarly, when T.S. testified at trial as to the events in the hotel she stated, "Usually we would do stuff with like the penis." When asked who "we" referred to, she answered, "Usually it was me, but I remember some stuff would happen with [A.S.]" Later in her testimony, when questioned as to her actions with defendant's penis, T.S. stated, "I think sometimes *we* put lotion down there, but I can't remember exactly." (Emphasis added).

¶ 51 However, defendant is correct that both girls also contradicted themselves at various points. Despite her statements to Kristina on May 26, 2020, A.S. stated in a later CAC interview the only "gross" thing that happened with defendant at the hotel was when she and T.S. removed his pants. In her second interview, she acknowledged T.S. had used her mouth on defendant's penis, but she did not disclose anything involving defendant and herself. T.S. also stated during her trial testimony that she did not remember "many times of when it happened" with A.S., despite her earlier testimony that both girls would do "stuff" with the penis. There is no doubt that the girls' testimony has been inconsistent.

¶ 52　　　　　We again reiterate our deference to the conclusions of the factfinder, in this case the jury, in determining whether an element of an offense has been proven beyond a reasonable doubt. It is the factfinder's responsibility to judge witness credibility and to resolve inconsistencies in their testimony. *People v. Schott*, 145 Ill. 2d 188, 206 (1991). That a witness contradicted herself does not necessarily render her testimony insufficient to sustain a conviction. *People v. Garcia*, 2012 IL App (1st) 103590, ¶ 84. A conviction will only be reversed if the credibility of the witness is so improbable as to raise a reasonable doubt as to a defendant's guilt. *People v. Mays*, 81 Ill. App. 3d 1090, 1099 (1980).

¶ 53　　　　　Moreover, although defendant characterizes A.S.'s statements as inconsistent, we find many are better characterized as reluctant, with her often claiming either she did not remember anything or did not wish to discuss it. This reticence may have multiple explanations. As stated previously, she had a fondness for defendant. She was young, possibly afraid of getting in trouble (T.S. repeatedly stated in her interviews that what occurred was their fault, not defendant's), and clearly uncomfortable in recounting what happened. The jury may reasonably have attributed the back and forth in her account to her age and desire to avoid uncomfortable conversations, rather than any untruthfulness in her initial statement that she touched defendant's penis. See *People v. C.H.*, 255 Ill. App. 3d 315, 332 (1993) (accepting the factfinder's conclusion that the defendant sexually abused the victim, despite the victim initially denying the abuse out of nervousness). It is further notable that A.S. appeared to be more forthcoming when discussing the events with her stepmother, with whom she was familiar, and less forthcoming when speaking with Homeyer, someone she did not know. See *People v. Zwart*, 151 Ill. 2d 37, 46 (1992) ("[C]hild victims of sexual abuse are often reluctant to discuss the abuse with anyone other than their mothers.").

¶ 54     Furthermore, A.S. was not the only person to testify at trial, and so she was not the only person whose credibility factored into the jury's decision. The jury also heard T.S.'s and Kristina's accounts of A.S.'s involvement in sexual acts with defendant, as well as hearing defendant's own account of the night at the hotel. In that account, he asked the jury to believe that, through a series of unexpected events outside of his control, he ended up driving both girls to the hotel and staying with them alone in a room with a single king-sized bed and a hot tub. The jury might reasonably have found defendant's account of the night lacked credibility, which may have cast doubt on his other assertions that he engaged in no inappropriate contact with either girl and bolstered the statements by the girls and others that he did. See *C.H.*, 255 Ill. App. 3d at 331 (finding the evidence sufficient where the testimony of the defendant and the victim conflicted and the court found the victim more credible). We do not claim to know the reasoning of the jury. We note only that it was in the best position to hear the testimony of each witness, weigh their competing credibility, and determine which statements to believe. *Schott*, 145 Ill. 2d at 206.

¶ 55     On reviewing the evidence in front of us in the light most favorable to the State, we conclude the evidence was sufficient to allow a reasonable factfinder to find defendant guilty of count IV beyond a reasonable doubt.

¶ 56                                III. CONCLUSION

¶ 57     For the reasons stated, we affirm the trial court's judgment.

¶ 58     Affirmed.